## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILCO AG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 08-635-SLR |
| | ) |
| PACKAGING TECHNOLOGIES & | ) |
| INSPECTION LLC, | ) |
| | ) |
| Defendant. | ) |

Richard L. Horwitz, Esquire and David E. Moore, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware.  Counsel for Plaintiff.  Of Counsel:  Jeffrey D. Sanok, Esquire and Jennifer H. Burdman, Esquire of Crowell & Moring LLP, Washington, D.C., and Bruce D. DeRenzi, Esquire of Crowell & Moring LLP, New York, New York.

David L. Finger, Esquire of Finger, Slanina & Liebesman, LLC, Wilmington, Delaware. Counsel for Defendant.  Of Counsel:  Alyssa Ann Finamore, Esquire and Ralph A. Dowell, Esquire of Dowell & Dowell, P.C., Alexandria, Virginia.

## MEMORANDUM OPINION

Dated:  May 19, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Wilco AG ("plaintiff") brought this patent infringement action against defendant Packaging Technologies & Inspection LLC ("PTI" or "defendant") on September 30, 2008. (D.I. 1) Plaintiff and defendant are competitors in the market for package leak testing products. Plaintiff asserts that defendant infringes U.S. Patent Nos. 5,907,093 ("the '093 patent") and 6,305,215 ("the '215 patent), both relating generally to products and methods for testing closed and filled containers for leaks. Defendant asserts the affirmative defenses of laches, "waiver and estoppel," and unclean hands. Defendant also asserts counterclaims for a declaratory judgment of invalidity (based generally upon a failure to comply with "35 U.S.C. §§ 102, 103, and/or 112"), unenforceability due to inequitable conduct, noninfringement, and tortious interference with prospective business relations. (D.I. 8) Presently before the court is plaintiff's motion to dismiss defendant's counterclaims of inequitable conduct and tortious interference with business relations. (D.I. 9) The court has jurisdiction pursuant to 28 U.S.C. §§ 1338(a) and 1367. For the reasons that follow, the court grants in part and denies in part plaintiff's motion.

## II. BACKGROUND

Plaintiff, a Swedish company, is the owner by assignment of the '093 and '295 patents. (D.I. 1 at ¶¶ 1, 9) Defendant is a Delaware corporation with its principal place of business in Tuckahoe, New York. (D.I. 8 at ¶ 28) Defendant is a former United States distributor for plaintiff's products. The parties had a working relationship until "early 2008." (D.I. 10 at 2; D.I. 13 at 3)

In March 2008, defendant introduced its own leak tester for empty and pre-filled medical syringes and vials called the "VeriPac 325/LV." In its press release, defendant stated that the VeriPac 325/LV detects as little as 0.1 microliters of vapor or gas release. Additionally, defendant stated that "[t]he VeriPac 325/LV core technology is based on the ASTM vacuum decay leak test method (F2338) recognized by the FDA as a consensus standard for package integrity testing." (D.I. 10, ex. A)  Plaintiff filed this infringement suit on September 30, 2008.

Plaintiff and defendant are active members in the Parenteral Drug Association ("PDA"). The PDA hosted a conference in San Diego, California on October 6 and 7, 2008, entitled "The Universe of Pre-filled Syringes and Injection Devices." (D.I. 13, ex. C)  At the conference, Dr. Dana Guazzo ("Guazzo"), an expert in the field of leak testing, gave a presentation entitled "Nondestructive Container Closure Integrity Test for Pre-filled Syringes." (Id. at 4)  As part of her lecture, Guazzo presented the results of ASTM round-robin tests for the PTI 325/LV vacuum decay method (F2338) for detecting leaks in pre-filled syringes. (Id., ex. D)  Guazzo endorsed defendant's method as "more sensitive" and "more reliable" than older (dye ingress) test methods. (Id., ex. D at 15)

Prior to Guazzo's presentation, on October 2, 2008, Gerhard Schramm ("Schramm"), plaintiff's director of sales, sent an email to Linda McCoy ("McCoy") and Shawn Kinney of the PDA. Schramm's email stated in relevant part:

> It has come to our attention that at the upcoming PDA conference . . . a presentation will be provided by Dr. Dana Guazzo concerning leak testing devices and methods [ ]. Based on Dr. Guazzo's previous presentations, we believe that Dr. Guazzo intends to attribute ownership of certain leak testing technology to [PTI] and to make reference to PTI's VeriPac 325 product.

2

> I wish to advise that Wilco has recently instituted a suit for infringement by PTI of Wilco's ['093 and '215 patents] in the District of Delaware, which addresses PTI's unauthorized appropriation of Wilco's patented leak testing technology. In keeping with this organization's laudable efforts to promote global sharing of knowledge and innovation through an unbiased forum for the exchange of industry perspectives and concerns, we respectfully request that any reference to PTI and its products in Dr. Guazzo's presentation be promptly removed.

(*Id.*, ex. G)

McCoy emailed Guazzo the following day, October 3, 2008, noting that eight of Guazzo's presentation slides appeared to contain information referenced by Schramm's email, and stating that "[u]nless you can present a strong argument that suggest[s] that you are legally privileged to present this information, on behalf of PDA and the Universe of Prefilled Syringes [and] Injection Devices Program Planning Committee, I am asking you to remove those slides." (*Id.*, ex. H) Guazzo thereafter engaged in discussions with Jennifer Ikeda ("Ikeda") of PDA. In the afternoon of October 3, 2008, Ikeda informed McCoy that Guazzo "respectfully can stand behind her presentation because it is a scientific paper of test results on the PTI test equipment and model, as defined by ASTM." (*Id.*, ex. I) Guazzo, therefore, gave her unabridged presentation at the conference as planned on October 6, 2008.

Prior to the October 2008 presentation, Guazzo gave a presentation (in January 2008) at the "Pre-filled Syringes Forum 2008" in Philadelphia, Pennsylvania. (*Id.*, ex. E) Guazzo's January presentation was entitled "Novel Nondestructive Approach for Integrity Testing Empty and Pre-filled Syringes." (*Id.*) Guazzo discussed several advantages to PTI's "new" VeriPac technology, including the 0.1 microliter detection limit. (D.I. 10, ex. D) The technology was described as "unique to PTI." (*Id.*, ex. D at

3

24) Plaintiff states that Guazzo's January 2008 presentation prompted Schramm's October 2, 2008 email to the PDA in advance of the October 2008 conference. (*Id.* at 4)

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008), 515 F. 3d at 234

4

(citations omitted).

## IV. DISCUSSION

### A. Tortious Interference with Business Relations

In its "Count II," defendant asserts a claim for "tortious interference with

prospective relations," as follows (and in its entirety):

37. PTI had a reasonable probability that it would have entered into a business relationship with one or more third parties, who were in attendance at the Parenteral Drug Association (PDA) in San Diego, California on October 6 and 7, 2008, to view a presentation by Dr. Dana Gauzzo of PTI, entitled "The Universe of Pre-filled Syringes and Injection Devices," which included information regarding PTI's VeriPac [3]25 product.

38. Upon information and belief, Wilco intentionally interfered with the relationships when Gerhard Schramm, the Sales Director of Wilco, emailed Linda K. Mims McCoy, the Program and Meetings Coordinator of PDA, on October 2, 2008, inaccurately advising her of "PTI's unauthorized appropriation of Wilco's patented leak testing technology," and representing that she remove "any reference to PTI and its products in Dr. Gauzzo's presentation."

39. Since Ms. McCoy abided Wilco's false assertion that PTI was misappropriating Wilco's patented leak testing technology, Ms. McCoy emailed Dr. Gauzzo on October 3, 2008, to request that Dr. Gauzzo remove any reference to PTI's new test method for testing leaks in syringes. As a result, Wilco's interference proximately caused injury to PTI, including the loss of potential business relationship with one or more of the parties in attendance at the PDA conference on October 6 and 7, and other actual damage or loss.

(D.I. 8)

"The basic elements which establish a prima facie tortious interference with a

business relationship in Delaware are the existence of a valid business relation . . . or

expectancy; knowledge of the relationship or expectancy on the part of the interferer;

an intentional interference inducing or causing a breach or termination of the

relationship or expectancy; and resultant damage to the party whose relationship or

5

expectancy has been disrupted."[1] *Bove v. Goldenberg*, No. Civ. A. 05-134, 2007 WL
446014, \*4 (Del. Super. Feb. 7, 2007) (citing *Bowl-Mor Co. v. Brunswick* Corp., 297
A.2d 61, 65 (Del. Ch. 1972)). Put another way, a plaintiff must establish: (1) the
reasonable probability of a business opportunity; (2) intentional interference; (3)
proximate causation; and (4) damages, "all of which must be considered in light of
defendant's privilege to compete or protect his business interests in a fair and lawful
manner." *Lipson v. Anesthesia Services, P.A.*, 790 A.2d 1261, 1285 (Del. Super. 2001)
(citations omitted).

Plaintiff moves to dismiss defendant's tortious interference claim as preempted
by federal patent law.  Alternatively, plaintiff moves to dismiss on the grounds that: (1)
defendant fails to properly identify a valid business relationship or expectancy with any
of the conference attendees; (2) defendant never identifies how an action by plaintiff
interfered with any such relationship, insofar as Gauzzio presented the information
complained about by plaintiff; and (3) defendant fails to allege causation and damages.

"State tort claims against a patent holder, including tortious interference claims,
based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws,
unless the claimant can show that the patent holder acted in 'bad faith' in the
publication or enforcement of its patent." *800 Adept, Inc. v. Murex Securities, Ltd.*, 539
F.3d 1354, 1369 (Fed. Cir. 2008); *see also Zenith Electronics Corp. v. Exzec, Inc.*, 182
F. 3d 1340, 1355 (Fed. Cir. 1999) ("[T]o avoid patent law preemption of such state law

___

[1]Defendant's tortious interference claim does identify the law under which it is
being brought.  In its answering papers, defendant indicates that it seeks to bring its
claim under Delaware law.  (D.I. 13 at 8)

6

tort claims, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim") (citation omitted).  Defendant asserts that its claim is not preempted because it alleges conduct that "goes well beyond providing notice of [plaintiff's] patent rights," namely, plaintiff's asserting "inappropriate legal conclusions" regarding defendant's alleged infringement and an "attempt to coerce a third party, Dr. Gauzzo, to modify an unbiased, scientific presentation[.]"  (D.I. 13 at 13) With respect to bad faith, defendant argues only that it generally pled a disregard by plaintiff for the falsity of its statements regarding defendant's alleged infringement.  (*Id.* at 13-14)

The court finds that defendant's pleading does not contain enough factual matter to suggest bad faith.[2]  *See Phillips*, 515 F.3d at 234 (citations omitted).  Plaintiff is entitled to communicate facts about its suit in the marketplace, including accusations of infringement, consistent with its allegations in suit.  Defendant was obligated, however, to allege that plaintiff made statements about defendant's infringement with some disregard for the truth or falsity of those statements.  *See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find

---

[2]The parties do not present arguments regarding whether "bad faith" is grounded in fraud so as to implicate the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  At least one court has noted a lack of clear authority in this regard. *See Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Service, L.L.C.*, Civ. No. 06-4693, 2007 WL 1394427, *9 fn.3 (N.D. Cal. May 10, 2007) (concluding that allegations of bad faith were specific enough to satisfy either Rule 8 or Rule 9 pleading standard). Because the court concludes that defendant's counterclaim does not meet the liberal pleading standard described in *Twombly*, 550 U.S. at 555-56 & n.3, the issue need not be addressed here.

bad faith in the communication of information about the existence or scope of patent rights. Indeed, a patentee . . . is fully permitted to press [its] rights even though he may misconceive what those rights are.") (internal quotation and citation omitted). Defendant generally stated that Schramm "inaccurately" advised McCoy about defendant's alleged infringement – a sentiment shared by any accused infringer, but not indicative of any disregard on the part of plaintiff for the accuracy of Schramm's statement. (D.I. 8 at ¶ 38) Defendant was also required to allege facts suggestive of discoverable evidence of bad faith with respect to plaintiff's request that the PDA remove Gauzzo's slides referencing defendant's product. The simple assertion that Schramm made the request does not suffice, as it is just as likely that such a request was made in good faith. (D.I. 8 at ¶ 39)

Even if preemption did not apply, however, the court agrees with plaintiff that defendant failed to plead a valid business relationship or expectancy and an interference with that relationship by plaintiff. Defendant avers that there was a "reasonable probability" that "it would have entered into a business relationship with one or more third parties, who were in attendance at [the PDA conference]," but these potential relationships were interfered with by Schramm's email to McCoy. (D.I. 8 at ¶¶ 37, 38) Defendant does not specifically identify any conference attendee with whom its business relationship was altered. Moreover, defendant does not detail how Schramm's email, unknown to the conference attendees at large, interfered with any such relationship. Defendant's omission likely results from the fact that Gauzzo ultimately gave her presentation in unabridged form. Defendant did not allege that it had a valid business relation or expectancy with Gauzzio, McCoy, or any other PDA

affiliate who was privy to Schramm's request, therefore, causation is also lacking. The court finds that defendant has not alleged a claim upon which relief may be granted.

## B. Inequitable Conduct

In its "Count I," defendant avers that the "'093 patent and the '215 patent are each . . . unenforceable"

> [d]ue to [the] applicant's inequitable conduct in prosecuting the applications that led to the '093 patent and the '215 patent by failing to disclose one or more prior art references which were known to the Wilco during the prosecution of the applications and are material to the one or more of the claims of each of the applications in violation of 37 C.F.R. § 1.56, including, but not limited to product information regarding Wilco's Vistakon system, which utilizes a vacuum to create low pressures, namely pressures below the vapor pressure of water, in a test chamber, and which was published and distributed by Wilco to its customers prior to the filing dates of the '093 and the '215 patents.

(D.I. 8 at ¶ 36(b))  Plaintiff moves to dismiss this claim on the grounds that defendant "failed to plead the separate and essential components of materiality and intent."  (D.I. 14 at 6)

A claim of patent unenforceability is premised upon inequitable conduct before the Patent & Trademark Office ("PTO"), which is a claim sounding in fraud.  Fraud is a clear exception to the otherwise broad notice-pleading standards under Fed. R. Civ. P. 9.  A plaintiff alleging unenforceability, therefore, must plead with particularity those facts which support the claim the patent holder acted fraudulently before the PTO.  *See e.g., Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1343-44 (Fed. Cir. 2003).

This court has previously found that pleadings that "disclose the name of the relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of

9

Rule 9(b)." *See, e.g., McKesson Information Solutions, LLC. v. Trizetto Group, Inc.*,
Civ. No. 04-1258, 2005 WL 914776, *3 (D. Del. Apr. 20, 2005) (citing *EMC Corp. v.
Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996)). Defendant at bar
identified the allegedly withheld prior art (product literature regarding the "Vistakon
system") and has identified that art as "material." (D.I. 8 at ¶ 36(b)) The word "intent"
does not appear in the pleadings, however, defendant alleged both that this art was
"known" to plaintiff and that plaintiff failed to disclose it to the PTO. (*Id.*) Defendant has
satisfied the pleading requirements of Rule 9(b), as it states, with reasonable
particularity, the prior art reference and instances of fraud to which it is referring.
Plaintiff is on notice of the misconduct alleged.[3]

## V. CONCLUSION

For the aforementioned reasons, the court grants plaintiff's motion to dismiss
with respect to defendant's tortious interference counterclaim and denies plaintiff's
motion with respect to defendant's unenforceability counterclaim based on inequitable
conduct. An appropriate order shall issue.

___

[3]The court notes that defendant's pleading is not particular enough to satisfy
Rule 9(b) with respect to prior art outside of that which has been named: "product
information regarding Wilco's Vistakon system."

10